USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 23, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                :
UNITED STATES OF AMERICA    :
                                                :     15 Cr. 491 (KBF)
    - v. -                             :
                                                :     <u>OPINION & ORDER</u>
SALVATORE DELLIGATTI,        :
                                                :
                    Defendant. :
------------------------------------------------------X

KATHERINE B. FORREST, United States District Judge:

       On October 21, 2015, the Court issued an order unsealing an indictment against Salvatore Delligatti and a number of others, charging them with, <u>inter alia</u>, alleged participation in a wide-sweeping racketeering enterprise along with conspiracy murder in aid of racketeering, attempted murder in aid of racketeering, conspiracy to commit murder-for-hire, illegal gambling, and use of firearms in connection with crimes of violence. The Government has proffered that evidence at trial will prove that Delligatti was a longtime associate of the Genovese Organized Crime Family of La Cosa Nostra ("LCN").

       The case was split into two groups for trial; Delligatti is the only defendant remaining in the first group; all other co-defendants in that group have pled guilty. Delligatti's trial is scheduled to commence March 12, 2018.

Before the Court are a number of motions in limine.[1] First, the defendant seeks to preclude the Government from offering expert testimony from Special Agent John Carillo, an investigator with the U.S. Attorneys' Office for the Southern District of New York.[2] For its part, the Government made a number of motions seeking preliminary rulings; the defendant is only contesting certain of them including:

Motion II:[3] Co-conspirator Statements

1) Statements that various individuals, including a codefendant Robert DeBello (who has pled guilty to racketeering) were inducted as "made" members of the Genovese Crime Family. According to the Government, another co-conspirator, Ryan Ellis, told a cooperating witness ("CW-2") that DeBello was a "made" guy and that Ellis and Delligatti were "on record" with DeBello. The Government seeks to admit these statements under Rule 801(d)(2)(E) as co-conspirator statements.

2) Statements by CW-2 to DeBello and Ellis that Delligatti had been arrested on state murder conspiracy charges. According to the Government, at a meeting between DeBello, Ellis, Romano, and CW-2, DeBello stated that Delligatti was "going to get us pinched," that "you can't beat a fucking conspiracy case," and that "if this gas station is

---

[1] If either the Government or the defendant believes there are any other outstanding motions, they should notify the Court within one week of this Decision, or by **March 2, 2018**.
[2] Carillo's career has also included work as an investigator for the Nassau County District Attorney's Office, an investigator for the National Insurance Crime Bureau, and twenty years of employment by the New York City Police Department where he reached the rank of Detective.
[3] Government Motions I, III, and V are either uncontested or not relevant to defendant Delligatti.

bugged, the whole neighborhood is fucked." The Government seeks to admit these statements under Rule 801(d)(2)(E) as co-conspirator statements.

Motion IV:  Evidence of various prior bad acts by Delligatti

The Government seeks to introduce evidence of three acts as either prior bad acts or direct evidence: 1) evidence that Delligatti ran an illegal gambling operation with alleged Genovese associate Christopher Castellano; 2) evidence that Delligatti ran an illegal prostitution ring with an associate, and that he hired that associate's brother, another cooperating witness ("CW-4") as a driver for that business; and 3) evidence that Delligatti made statements to CW-2 about having planted a bomb in a club after his alleged extortion conspiracy failed. The Government seeks to introduce the first and third acts as direct evidence of Delligatti's role in the charged racketeering and extortion conspiracies, and the second act to prove the bond of trust between Delligatti and CW-4.

Motion VI:  Evidence regarding the murder of Genovese Associate Christopher Castellano

According to the Government, Castellano was a former partner in several illegal gambling operations who was murdered as a result of suspicions that he was cooperating against the Genovese crime family. It seeks to introduce evidence about conversations that both Ellis and Delligatti had with CW-2 explaining why Castellano was killed. The Government offers this evidence to prove the nature and existence of the charged racketeering conspiracy and also to demonstrate the rules of the Genovese family organization around cooperation with law enforcement.

I. LEGAL STANDARDS

    A. Standard on a Motion in Limine

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (quotation marks omitted); see also Highland Capital Mgmt., L.P., v. Schneider, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008). "The trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." United States v. Ozsusamlar, 428 F. Supp. 2d 161, 164–65 (S.D.N.Y. 2006) (citations omitted).

A court's ruling on a motion in limine "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [party's] proffer." Luce v. United States, 469 U.S. 38, 41 (1984). Significantly, in limine rulings occur pre-trial. The evidence at trial may come in differently than anticipated, altering the solidity of the proffered basis for a pretrial ruling. The Court therefore invites any party who believes that the factual record as developed at trial supports a revised ruling to bring such an application in a timely manner.

    B. Relevant Evidence

Rule 401 defines relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence," so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401; see also Old

4

Chief v. United States, 519 U.S. 172, 178 (1997). "The fact to which the evidence is directed need not be in dispute." Old Chief, 519 U.S. at 179 (quoting Fed. R. Evid. 401 advisory committee's note) (internal quotation marks omitted).

To be relevant, evidence need not constitute conclusive proof of a fact in issue, but only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." McKoy v. North Carolina, 494 U.S. 433, 440 (1990) (quoting New Jersey v. T.L.O., 469 U.S. 325, 345 (1985)) (internal quotation marks omitted); see also United States v. Abu-Jihaad, 630 F.3d 102, 132 (2d Cir. 2010).

Proof of crimes committed by other individuals in a RICO conspiracy is relevant to show the existence and nature of the conspiracy. United States v. Brady, 26 F.3d 282, 287 (2d Cir. 1994). The Second Circuit has previously held that evidence of murders committed by other members of a conspiracy in which the trial defendant did not participate is admissible to show internal wars within an organized crime family and to demonstrate the existence of a RICO enterprise. Id.

C. Rule 403

Rule 403 authorizes the exclusion of relevant evidence when "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; see also Old Chief, 519 U.S. at 180. "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing

5

evidentiary alternatives." Old Chief, 519 U.S. at 184. "If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk." Id. at 182–83. In making this assessment, a court should take into consideration the "offering party's need for evidentiary richness and narrative integrity in presenting a case." Id. at 183.

Rule 403 is concerned with "some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980)) (internal quotation marks omitted).

Several courts have found that "other act" evidence is not unfairly prejudicial where it is not "any more sensational or disturbing than the crimes" with which the defendant has been charged. United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990); see also United States v. Curley, 639 F.3d 50, 59 (2d Cir. 2011) (finding that the district court did not err in finding that the probative value of prior acts of domestic violence with similar characteristics to the charged conduct outweighed the potential prejudicial effect when the prior acts were no more sensational than the charged conduct); Abu–Jihaad, 630 F.3d at 133 (finding that conversations referring to support of jihad were no more inflammatory than the charges in the indictment); United States v. Mercado, 573 F.3d 138, 142 (2d Cir. 2009) (upholding a Rule 403 determination where the challenged evidence was "not especially worse

6

or shocking than the transactions charged" and where the district court instructed the jury as to what inferences could properly be drawn from such evidence); see also United States v. Smith, 727 F.2d 214, 220 (2d Cir. 1984) (inquiring whether other crimes evidence involved "violence or conduct likely to arouse irrational passions").

    D. Rule 702

"[E]xpert testimony may help a jury understand unfamiliar terms and concepts." United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991). However, a trial court is obligated to act as a gatekeeper with respect to expert testimony. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993); see also Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008). "The primary locus of [that] obligation is [Federal Rule of Evidence] 702, which clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify." Daubert, 509 U.S. at 589. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

All experts must meet the basic requirements of Rule 702 of the Federal Rules of Evidence. This Court considers (1) whether the proposed expert is

7

qualified; (2) whether the expert bases his opinion upon reliable data and methodology; and (3) whether the proposed testimony will assist the trier of fact. See, e.g., Nimely v. City of New York, 414 F.3d 381, 396–97 (2d Cir. 2005).

Importantly for this matter, the Second Circuit has allowed experts to testify in order to explain "the operation, structure, membership, and terminology of organized crime families." United States v. Matera, 489 F.3d 115, 121 (2d Cir. 2007); citing United States v. Locascio, 6 F.3d 924, 936 (2d Cir. 1993); United States v. Amuso, 21 F.3d 1251, 1263–64 (2d Cir. 1994) (allowing same and noting that "the operational methods of organized crime families are still beyond the knowledge of the average citizen"). However, the Second Circuit has drawn a line where the expert's testimony veers towards the criminality and specific characteristics of the defendant. United States v. Mejia, 545 F.3d 179, 190–91 (2d Cir. 2008).

More specifically, in recent years the Second Circuit has permitted Special Agent John Carillo to testify as to a description of LCN, how LCN families are organized, the hierarchy within each crime family, the rules governing LCN activities, the meaning of certain terms specific to LCN, the types of crimes committed by LCN, and the manner in which those crimes are typically carried out. United States v. Dey, 409 Fed. App'x 372, 374 (2d Cir. 2010); see also United States v. Boyle, 2010 WL 286624, at *2 (S.D.N.Y. Jan. 15, 2010) (holding same).

Expert testimony, like all testimony, is subject to the requirements of Rule 403. Rule 403 provides for the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

E. Rule 801(d)(2)(E)

Rule 801(d)(2)(E) provides a hearsay exclusion for out-of-court statements made by co-conspirators. In order to admit a statement under Rule 801(d)(2)(E), this Court must find by a preponderance of the evidence "(1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." United States v. Tracy, 12 F.3d 1186, 1196 (2d Cir. 1993) (citations omitted); see also Bourjaily v. United States, 483 U.S. 171, 176 (1987) (holding that a "preponderance of the evidence" standard applies). "[S]tatements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence of those four prerequisites." Tracy, 12 F.3d at 1199 (citations omitted). In this case, that ruling—while expected—depends on how the evidence comes in.

The standard for a judicial determination that the elements to allow admission pursuant to the co-conspirator exception are met is lower than that for a criminal conviction. Courts repeatedly have found that even an acquittal on a conspiracy count "does not destroy the admissibility of the declarations of co-conspirators on the substantive charge." United States v. Clark, 613 F.2d 391, 403 (2d Cir. 1979) (citation omitted).

9

The law also has long provided that "[t]he conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged in the indictment." United States v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999); see also United States v. Russo, 302 F.3d 37, 45 (2d Cir. 2002). In fact, the Second Circuit has held that it is not even necessary that the Government charge a conspiracy to take advantage of Rule 801(d)(2)(E). United States v. DeVillio, 983 F.2d 1185, 1193 (2d Cir. 1993).

An organized crime syndicate "cannot function properly unless its members and persons who do business with it understand its membership, leadership and structure." Russo, 302 F.3d at 46. Therefore, statements in which co-conspirators are "giving associated persons information about its membership" are permissible under 801(d)(2)(E). Id.

F. Prior Bad Acts

"It is well established that evidence of uncharged criminal activity is not considered 'other crimes' evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997) (quoting United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989)) (alterations and internal quotation marks omitted); United States v. Kassir, 2009 WL 976821, at *2 (S.D.N.Y. Apr. 9, 2009). Such evidence is direct evidence of a crime. See Kassir, 2009 WL 976821, at *2. Where a conspiracy has been charged,

10

"uncharged acts may be admissible as direct evidence of the conspiracy itself." United States v. Diaz, 176 F.3d 52, 79 (2d Cir. 1999).

The Second Circuit evaluates 404(b) evidence under an inclusionary approach that allows evidence for any purpose other than to show a defendant's criminal propensity. United States v. McCallum, 584 F.3d 471, 475 (2d Cir. 2009); see also United States v. Paulino, 445 F.3d 211, 221 (2d Cir. 2006). Courts therefore may allow evidence of other acts by the defendant if the evidence is relevant to an issue at trial other than the defendant's character and if the risk of unfair prejudice does not substantially outweigh the probative value of the evidence. United States v. Morrison, 153 F.3d 34, 57 (2d Cir. 1998); see also United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002). This inclusionary approach does not, however, invite the Government "to offer, carte blanche, any prior act of the defendant in the same category of crime." McCallum, 584 F.3d at 475 (quoting Garcia, 291 F.3d at 137).

Another "legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case" and can assist the jury in understanding the relationship of trust between the coconspirators. United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996) (citations omitted); see also Mercado, 573 F.3d at 141 (prior bad acts evidence may be relevant to show the development of the relationship between defendants, provide background to the events alleged, and enable the jury to understand the complete story of the crimes charged).

## II. DISCUSSION

### A. Expert Testimony of John Carillo

Defendant has moved to preclude or limit the testimony of the Government's organized crime expert at trial—SDNY investigator John Carillo. The Government intends to call Mr. Carillo for four purposes, only two of which defendant disputes: 1) to testify to the "rules and protocol governing the organized crime families," and 2) to testify to "the purpose for which organized crime families exist and the illegal means by which they typically generate income." Defendant does not assert that Carillo is unqualified, unreliable, or not helpful to the trier of fact; rather he contends that Carillo's testimony is: 1) inadmissible hearsay; 2) will improperly bolster testimony from fact witnesses; 3) will raise Confrontation Clause issues; and 4) will encourage the jury to find the defendant guilty by association. The Court disagrees with these arguments and will call Carillo to testify.

The case law is clear in this regard—Carillo is allowed, and has in fact frequently been allowed—to testify as an expert witness regarding LCN. As an expert, he can "testify to opinions based on hearsay or other inadmissible evidence if experts in the field routinely rely on such evidence in forming their opinions." Locascio, 6 F.3d at 938 (citing United States v. Daly, 842 F.2d 1380, 1387 (2d Cir. 1988)) (allowing expert on organized crime to rely on hearsay since "law enforcement agents routinely and reasonably rely upon such hearsay in the course of their duties"). Nor is his testimony improperly bolstering just because there may

be accomplice witnesses who can testify.  See, e.g., Amuso, 21 F.3d at 1263–64 (allowing expert testimony on LCN where the agent "testified about a broad range of topics" including LCN terminology and the existence and structure of organized crime families, despite the fact that some of his testimony overlapped with the Government's fact witnesses).

Furthermore, no Confrontation Clause issues are raised as, where here, the expert merely relies on out-of-court statements to formulate his opinion, and does not purport to state them for their truth.  Mejia, 545 F.3d at 199; see also Boyle, 2010 WL 286624 at *2 (finding no Confrontation Clause violation where the Government represented that Carillo would rely on out-of-court statements "as one of many bases" for his expert opinion but would not repeat them "verbatim"). Finally, defendant's argument that the expert testimony will encourage the jury to find the defendant guilty by association is inapposite as, where here, the expert is testifying on organized crime.  Defendant relies on a line of cases, see, e.g., United States v. Cruz, 981 F.2d 659 (2d Cir. 1992), in which expert testimony was found to be improperly admitted when explaining testimony that was not difficult for a lay juror to understand—for example, a drug transaction.  Carillo is offered as an expert on organized crime syndicates—and, more specifically on the operations of LCN.  As discussed above, expert witnesses are often found both necessary and helpful in understanding organized crime.

Therefore, defendant's motion to preclude or limit the testimony of John Carillo is DENIED.

13

B. <u>Co-Conspirator Statements</u>

1. <u>Ellis's Statements to CW-2</u>

The Government seeks to admit out-of-court statements made by codefendant Ryan Ellis to CW-2 under Fed. R. Evid. 801(d)(2)(E). According to the Government, Ellis said both that codefendant Robert DeBello was a "made guy" and also that both Ellis and Delligatti were "on record" with DeBello. Defendant objects, arguing that the Government has not met its burden of showing by a preponderance that the statements were made during and in furtherance of a specific conspiracy in which both Ellis and Delligatti were members.

In order to be admissible as a hearsay exception under 801(d)(2)(E), the out-of-court statement must be made by the defendant's co-conspirator <u>during and in furtherance</u> of the conspiracy. Based upon the government's proffer, the Court expects that at trial it will be able to make a finding by a preponderance that Delligatti and Ellis were co-conspirators. Furthermore, since an organized crime syndicate "cannot function properly unless its members and persons who do business with it understand its membership, leadership, and structure," statements that convey information about others in the same organized crime syndicate are considered to be during and in furtherance of a conspiracy. <u>Russo</u>, 302 F.3d at 46.

Here, CW-2 was repeating Ellis's statements about Delligatti's status as "on record" with DeBello, and about DeBello being a "made guy." As these statements directly refer to Delligatti and DeBello's role within the structure, the Court finds that they are during and in furtherance of the conspiracy and therefore admissible

under 801(d)(2)(E). The Government's motion to introduce them is therefore granted, subject to the appropriate foundation being laid.

### 2. DeBello's Statements to CW-2 at the Gas Station

The Government similarly seeks to admit out-of-court statements made by DeBello to CW-2 under 801(d)(2)(E). According to the Government, DeBello stated 1) that Delligatti was "going to get us pinched;" 2) that "you can't beat a fucking conspiracy case;" and 3) that "if this gas station is bugged, the whole neighborhood is fucked." Defendant argues that these statements, made after the fact, are not in furtherance of the conspiracy, but rather "idle chatter."

However, the out-of-court statements at issue are not being introduced for their truth. The statements are not being offered in an attempt to prove whether you can or cannot "beat a fucking conspiracy case" or whether Delligatti would or would not "get [them] pinched." Rather, they are being offered to show the relationship between the various co-conspirators. They are therefore not hearsay and admissible. The Court therefore grants the Government's motion to admit them, subject to the appropriate foundation being laid.

## C. Delligatti's Prior Bad Acts

The Government seeks to introduce evidence of Delligatti's involvement in other bad acts, either as direct proof of the charged racketeering conspiracy and of his membership in that conspiracy, or as evidence admissible for other purposes under Rule 404(b). Specifically, it wants to introduce evidence of: 1) Delligatti's involvement in an illegal gambling operation with Genovese associate Christopher

15

Castellano from in or about 2009 through in or about 2010; 2) Delligatti's involvement in an illegal prostitution business from in or about 2008 through in or about 2010; and 3) Delligatti's involvement in planting a bomb in a club in connection with his participation in the charged extortion conspiracy. Defendant argues against admission of all three. The Court finds, for the reasons set forth below, that the evidence of Delligatti's prior acts is relevant, direct evidence and therefore admissible, subject to the appropriate foundation being laid.

1. Gambling Operation

The Government argues that the gambling operation is direct evidence of the existence of the charged racketeering conspiracy; defendant counters that the gambling conspiracy is distinct from the instant conspiracy. Since the Government has proffered that Delligatti was involved with Genovese family associates Castellano and Romanello during the period of the Indictment, the Courts finds that evidence of these criminal activities is direct evidence of the charged racketeering conspiracy and thus admissible, subject to the appropriate foundation being laid.

2. Prostitution Business

The Government next seeks to introduce evidence of Delligatti's involvement with CW-4 in a prostitution business in order to show that Delligatti and CW-4 had formed a "bond of trust" that led Delligatti to turn to CW-4 for help in carrying out a murder. Defendant counters that the evidence of the prostitution business is by no

16

means "essential" to proving the relationship between CW-4 and Delligatti and that it is therefore prejudicial.

However, where potential evidence "explain[s] the development of the illegal relationship . . . and explain[s] the mutual trust that existed between the coconspirators," it will be "plainly admissible." United States v. Guerrero, 882 F. Supp. 2d 463, 492 (S.D.N.Y. 2011); see also Pipola, 83 F.3d at 566 (holding that evidence of other bad acts "may also be used to help the jury understand the basis for the co-conspirators' relationship of mutual trust"). In this case, the Government seeks to introduce evidence of the prostitution business in order to show that CW-4 worked for Delligatti transporting prostitutes to appointments with customers and that this led Delligatti to trust CW-4 with the alleged murder-for-hire. As such, it is plainly relevant and, assuming the proper foundation, admissible.

### 3. Planting a Bomb

Finally, the Government seeks to introduce evidence that Delligatti told CW-2 that he planted a bomb in the Level Royal Night Club. Defendant argues that such evidence is both unnecessary and prejudicial

As the Government intends to prove a conspiracy to extort the Level Royal at trial, Delligatti's out-of-court statements about planting a bomb are direct evidence of that conspiracy. Moreover, they are admissible as opposing party statements under Rule 801(d)(2)(A), as the statements were made directly by Delligatti to CW-2, and are being offered against Delligatti.

4. Rule 403 Analysis

Defendant further claims that all of the bad acts that the Government wishes to introduce are more prejudicial than probative. As noted above, Rule 403 authorizes the exclusion of relevant evidence when "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; see also Old Chief, 519 U.S. at 180.

None of the above-mentioned bad acts—the gambling business, prostitution business, or bomb plot—are substantially more prejudicial than probative. They are each probative as to the nature of the conspiracy and the relationships within the conspiracy; and the allegations of criminal involvement are similar to, and no more prejudicial than, the crimes with which Delligatti has been charged. Curley, 639 F.3d at 59; Abu-Jihaad, 630 F.3d at 133.

As such, the Court finds that the prior bad acts are relevant, direct evidence and that they are more probative than prejudicial. Therefore, the Government's Motion in Limine IV is granted, subject to the appropriate foundation being laid.

D. The Murder of Castellano

Finally, the Government seeks to introduce evidence to show that unidentified members of the Genovese family had Genovese associate Christopher Castellano—a former partner of Delligatti's in several illegal gambling operations—

murdered on July 4, 2010 due to suspicions that he was cooperating with law enforcement.  It argues first that the evidence is admissible to prove the existence and nature of the charged conspiracy, and second that it will help the jury to understand the rules and norms of the Genovese family—including the prohibition on Genovese family participants from discussing the enterprise with law enforcement, and the need for a participant to obtain the approval of his supervisor before engaging in a murder, especially when the victim is affiliated with the family.  Defendant counters that evidence surrounding the Castellano murder is irrelevant and unfairly prejudicial and therefore should not be admitted.

Evidence is relevant if it tends to make a fact more or less probable than it would be without the evidence," so long as "the fact is of consequence in determining the action."  Fed. R. Evid. 401; see also Old Chief, 519 U.S. at 178.  As with Brady, the Court finds here that evidence of the murder of Castellano is directly relevant to the existence and nature of the charged conspiracy.  Furthermore, the proposed evidence would help the jury understand why Delligatti would have been willing to murder Bonelli—who, like Castellano, was suspected of cooperating with law enforcement.  Moreover, it is far more probative than prejudicial under Rule 403.  While it is prejudicial that members of the Genovese crime family have murdered suspected cooperators, it is similar to, and no more prejudicial than the crimes with which Delligatti has been charged.  Curley, 639 F.3d at 59; Abu-Jihaad, 630 F.3d at 133.

Therefore, the Government's Motion in Limine VI is granted, subject to the appropriate foundation.

III. CONCLUSION

For the reasons set forth above, the Government's Motions II, IV, and VI are GRANTED. Defendant's Motion is DENIED. The Clerk of Court is directed to terminate the motions at ECF Nos. 468 and 472.

SO ORDERED.

Dated: New York, New York
February 23, 2018

_____
KATHERINE B. FORREST
United States District Judge